# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DENTAL HEALTH PRODUCTS, INC.,

    Plaintiff,

v.                                                           Case No. 08-C-1039

FRANK RINGO,

    Defendant.

## DECISION AND ORDER

        Plaintiff Dental Health Products, Inc., ("DHP") filed this action against Defendant Frank Ringo ("Ringo") for injunctive relief and damages based on claims of Misappropriation of Trade Secrets pursuant to Wisconsin Statutes §134.90; Breach of Agency Duty; and violation of the Computer Fraud and Abuse Act, 18 U.S.C. §1030. The case is currently before the Court on Ringo's Federal Rule of Civil Procedure 12(b)(3) motion to dismiss for improper venue or, alternatively, for transfer to the Northern District of Illinois pursuant to 28 U.S.C. § 1406(a). In the event venue is found to be proper, Ringo seeks dismissal of DHP's claims for Misappropriation of Trade Secrets and violation of the Computer Fraud and Abuse Act pursuant to Rule 12(b)(6) for failure to state a claim. Ringo has also filed a motion for a more definite statement regarding DHPS's Breach of Agency Duty claim, pursuant to Rule 12(e). For the reasons that follow, all of Ringo's motions will be denied.

**FACTS**

At this stage of the proceedings, the Court must deem DHP's well-pleaded allegations as true, and draw all reasonable inferences in favor of DHP. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). The facts of the case are therefore derived from the allegations in DHP's Complaint.

DHP is a Wisconsin corporation in the business of selling dental supplies and dental products to licensed dentists and dental practitioners throughout the United States. (Compl. ¶ 7.) Ringo was employed by DHP as a field sales representative for the purpose of selling dental supplies and dental equipment from February 2002 until July 31, 2008. (*Id.* ¶¶ 5, 6.) DHP observed a decline in Ringo's sales volume, beginning several months prior to Ringo's resignation in July 2008. (*Id.* ¶ 7.) In July 2008, DHP discovered that Ringo was affiliated with another dental supply company. (*Id.* ¶ 8.) DHP also discovered that customers who had ordered from DHP in the past were placing orders with the other dental supply company while Ringo was still in DHP's employ. (*Id.* ¶ 10-11.)

During the time that Ringo was employed by DHP, he was furnished with a laptop computer to be used in accessing the DHP's password-protected computer network, which was hosted on computer servers located in New Franken, Wisconsin. (*Id.* ¶ 13.) Ringo had access through the laptop to, among other things, highly confidential information about customers, business practices of DHP as it related to its customers, negotiating strategies of customers, information as to product availability, and sales reports. (*Id.* ¶ 14.) This information was not available through any other source. (*Id.* ¶ 15.) Ringo was instructed by DHP to immediately return the laptop upon his resignation. (*Id.* ¶ 17.) DHP performed forensic tests upon the laptop after its return and discovered

2

that Ringo had installed and used a Norton ghostwriting program on the laptop to copy the entire hard drive onto an external hard drive on multiple occasions. (*Id.* ¶¶ 18-26.) DHP alleges that Ringo used the information copied from the computer to fill customer supply orders from DHP's competitors. (*Id.* ¶ 27.) DHP alleges that Ringo has used the proprietary information to the benefit of Ringo's current employer and to the detriment of DHP. (*Id.* ¶ 29.)

**DISCUSSION**

**I.      Venue and Transfer**

Ringo first seeks dismissal of the case for improper venue or, alternatively, transfer to the Northern District of Illinois pursuant to 28 U.S.C. § 1406(a). "When a defendant challenges venue, the plaintiff bears the burden of establishing that its chosen venue is proper." *Emjayco v. Morgan Stanley & Co.*, 901 F. Supp. 1397, 1400 (C.D. Ill. 1995). Courts decide venue questions mainly on the basis of the pleadings. *Id.* When deciding a venue question, a court takes as true the allegations in the plaintiff's complaint unless controverted by the defendant's affidavits. *Id.* The court resolves any conflicts in the affidavits in the plaintiff's favor. *Id.* To defeat a motion to dismiss or transfer a case, the plaintiff must allege and establish facts which support venue in its chosen district. *See id.*

Venue is, in general, governed by 28 U.S.C. § 1391. Unless another statute provides otherwise, a civil action in which jurisdiction is not founded solely on diversity of citizenship, which is the case here, can be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is

3

the subject of the action is situated, or (3) a judicial district in which any defendant
may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). Since Ringo does not reside in this district, venue would lie here only if "a substantial part of the events or omissions giving rise to the claim" occurred here, or "a substantial part of the property that is the subject of the action" is situated here.

Ringo argues that it is clear from DHP's complaint that he worked from a branch office located in Illinois and the only other states that were involved are Indiana and Iowa. He is alleged to have begun working for a dental supply company in Iowa and to have solicited business in Indiana, as well as Illinois. Although DHP's principal place of business is in Wisconsin and its computer server is located there, Ringo argues that the complaint contains no allegations of events or omissions in Wisconsin. Absent any allegation that a substantial part of the events or omissions giving rise to its claims occurred in the Eastern District of Wisconsin, Ringo argues that the case should either be dismissed or transferred to the Northern District of Illinois where it could have been brought originally.

Venue is clearly proper in the Eastern District of Wisconsin. Count II of DHP's complaint asserts a breach of agency duty claim against Ringo. The agency relationship alleged in the complaint arose by operation of an employment contract, and thus the claim is at least one of breach of contract, and may be tortious as well. *Burbank Grease Services, LLC v. Sokolowski*, 2006 WI 103,¶ 42, 294 Wis.2d 274, 717 N.W.2d 781 ("A claim for the breach of an agent's duty of loyalty may sound both in tort and in contract."). In determining whether a substantial part of the events or omissions giving rise to the plaintiff's contract claim occurred or did not occur in a particular district, "the factors that the courts tend to focus on include: where the contract was negotiated or

4

executed, where the contract was to be performed, and where the alleged breach occurred." Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice And Procedure: Jurisdiction 3d* § 3806.1, at 205-12 (2007). Moreover, "[i]n the electronic age, when face-to-face encounters are less common, the letters, facsimiles, e-mails, and telephone calls that are transmitted from, and received in, a district during the negotiation and execution of a contract often are deemed substantial events in the district for venue purposes." *Id.* at 212. Thus, in *Schomann Intern. Corp. v. Northern Wireless, Ltd.* 35 F. Supp. 2d 205 (N.D. N.Y. 1999), a substantial part of a New York telecommunication company's breach of contract action against a nonresident engineering firm was found to have occurred in the Northern District of New York where, even though the defendant was not in New York during either the negotiation or execution of the contract, the terms of contract required the defendant firm to maintain regular contact with company's New York office.

The facts here present an even stronger case for venue in this district. Ringo negotiated his employment contract in Wisconsin and signed all "new hire" documents at DHP's home office in this district. (Aff. of Dale Roberts ¶¶ 2, 3.) He executed a confidentiality agreement that contained a provision stating that all questions arising thereunder would be governed by Wisconsin law and submitting to jurisdiction and venue in Wisconsin as to any action arising in connection with the agreement. (*Id.* ¶ 4.) During the course of his employment, he had weekly, if not daily telephone and email communication with the home office in Wisconsin, and used the corporate computer systems for email, access to Sales Logix (a database of highly confidential information regarding DHP's customers and business, (Compl. ¶ 14)) and to receive sales and productivity reports. (*Id.* ¶ 5.) Ringo received his regular paychecks from Wisconsin, attended mandatory quarterly managers meetings in Green Bay, along with annual sales recognition events and sales conferences. (*Id.* ¶¶

5

7,8. ) He also reported to DHP's Wisconsin-based supervisory personnel, including its CEO, on a regular basis.

The trade secrets Ringo is alleged to have misappropriated in Count I of the complaint consist of DHP's confidential compilation of information concerning its customers for dental products; its costs and margins for supplying dental products; the limitations on its ability to meet identified needs of existing and potential DHP customers; DHP's strategic plans, market research and discussions regarding the market for and business opportunities available for supplying new and existing dental products; and DHP's sales productivity and account information for other company sales representatives, all of which was stored on its server located in Wisconsin. It thus follows that the computer system Ringo is alleged to have accessed in violation of the Computer Fraud and Abuse Act as alleged in Count III of the complaint is also located in Wisconsin.

In *Argent Funds Group, LLC v. Schutt,* 2006 WL 2349464 (D. Conn. June 27, 2006), the Court discussed the question of venue for a claim arising under the Computer Fraud and Abuse Act in a case in which a former employee of a Connecticut financial services firm had allegedly accessed confidential and valuable fund and financial information remotely, downloaded that information to two laptop computers and two hard drives of a Dell desktop computer, and stole the laptops, the hard drives, and their associated software after being terminated from her position. The confidential information that was allegedly stolen was located on computer file servers at the firm's headquarters in Connecticut, and the former employee resided in Florida at the time. Despite the fact that the information obtained by the former employee was not used in Connecticut, the Court had no difficulty in concluding that a substantial part of the event giving rise to the claim occurred there:

6

> the nature of Argent's claim is an injury arising from the alleged theft of confidential information, the computers, and the software that was originally installed on the computers. Substantial events material to the claim occurred in Connecticut; Schutt would not have been able to obtain the confidential information had the Connecticut file server never transferred the information to her via the internet. The Connecticut file servers thus played a central role in the events that gave rise to the claim, and were one of the means by which the defendant allegedly stole the confidential information.

*Id.* at *2. Even if a substantial part of the events or omissions giving rise to the claim had not occurred in Connecticut, the Court concluded that venue would still be appropriate there under § 1391(b) because a substantial part of property that was the subject of the action was situated in Connecticut. "The intellectual property at issue in this case is Argent's confidential business information, which is located on the file servers in Connecticut. Therefore, venue is appropriate in Connecticut either because the property at issue is located here, or because a substantial part of the events giving rise to the claim occurred in Connecticut." *Id.*

The same reasoning applies in this case. The trade secrets alleged stolen by Ringo and the computers system in which they were stored and that he allegedly accessed in violation of the Computer Fraud and Abuse Act were located in Wisconsin. Moreover, the duty of loyalty to DHP that he is accused of breaching required ongoing communication and regular contact with his supervisors in Wisconsin. The alleged acts of disloyalty, at least to the extent that they took the form of deception and misrepresentation, constitute a substantial part of the events or omissions giving rise to DHP's breach of agency duty claim. It thus follows that a substantial part of the events or omissions giving rise to DHP's claims occurred in this district. Ringo's motion to dismiss will therefore be denied. And since venue in this district is proper, it necessarily follows that his

7

alternative motion to transfer venue to the Northern District of Illinois pursuant to 28 U.S.C. § 1406(a) must be denied also.

**II.    Rule 12(b)(6) Motion To Dismiss Counts I and III.**

A Rule 12(b)(6) motion to dismiss is used to test the legal sufficiency of a complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). Dismissal is granted only if the "plaintiff has failed to allege any set of facts upon which relief may be granted." *Id.* In order to give a defendant fair notice of what the claim is, and the grounds upon which the claim rests, Fed. R. Civ. P. 8(a)(2) requires only a short and plain statement of a claim showing that the plaintiff is entitled to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim for relief does not need detailed factual allegations; however, the factual allegations must be enough to create a right to relief beyond the "speculative level." *Id.* Plaintiff's complaint meets this test.

**A.    Misappropriation of Trade Secrets Claim**

Count I of the complaint asserts a claim for misappropriation of trade secrets. To state a claim for misappropriation of trade secrets, a plaintiff must demonstrate that the material referred to in the complaint is a trade secret and that the trade secret was misappropriated. Wisconsin has codified the definition of a trade secret as:

> [I]nformation, including a formula, pattern, compilation, program, device, method, technique or process to which all of the following apply: (1) [t]he information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use[;] [and] (2) [t]he information is the subject of efforts to maintain its secrecy that are reasonable under the circumstances.

8

Wis. Stat. § 134.90(1)(c); *Minuteman, Inc. v. Alexander*, 147 Wis. 2d 842, 852, 434 N.W.2d 773, 777 (Wis. 1989). In order to show that particular information was a trade secret, the plaintiff must show that its trade secret is valuable, not known to others who might profit from its use, and that the trade secret has been handled by means reasonably designed to maintain secrecy. *Idx Sys. Corp. v. Epic Sys. Corp.*, 285 F.3d 581, 583 (7th Cir. 2002).

In addition, Wisconsin courts have held that a customer list may be considered a trade secret when identical or nearly identical products or services or both are sold to a small, fixed group of purchasers. *Nalco Chem. Co. v. Hydro Tech., Inc.*, 984 F.2d 801, 804 (7th Cir. 1993); *Minuteman, Inc.*, 147 Wis. 2d at 857, 434 N.W.2d at 779. When analyzing whether customer information is a trade secret, a court looks at whether the plaintiff took reasonable measures to protect the confidentiality of the information. *Maxpower Corp. v. Abraham*, 557 F. Supp. 2d 955, 961 (W.D. Wis. 2008). A court looks at, among other factors, whether the plaintiff had its employee sign a confidentiality agreement, whether the employee used the information for the benefit of the new employer, and whether the plaintiff made an attempt to insure that the employee no longer had access to the confidential information through the employee's laptop after the employee's resignation. *See id.*

Here, I am satisfied that DHP has alleged facts that show that the customer information could constitute a trade secret, and that the trade secret may have been misappropriated by Ringo. DHP took reasonable measures to protect the confidentiality of the information by having Ringo sign a confidentiality agreement (Compl. ¶ 36). Additionally, DHP alleges that Ringo used the information for the benefit of his new employer. (Compl. ¶¶ 29, 30, 33.) Also, DHP attempted to insure that Ringo no longer had access to the confidential information by requiring the immediate

9

return of the laptop. (Compl. ¶ 17.) In addition, DHP has alleged facts that show that the information is valuable and not generally known to others because the information is only found on DHP's computer network. (Compl. ¶ 15.) Finally, DHP alleges that Ringo misappropriated the information by downloading the confidential information during the time Ringo was employed and after he gave notice of his resignation, but prior to returning the laptop. (Compl. ¶¶ 17, 18-26.) These alleged facts are sufficient to support a claim of misappropriation of trade secrets under Wisconsin Statutes § 134.90(1)(c).

### B. Violation of the Computer Fraud and Abuse Act Claim

Count III of the complaint alleges a violation of the Computer Fraud and Abuse Act ("CFAA"). 18 U.S.C. § 1030 (2008). Although its complaint does not specify the provisions of the CFAA Ringo is alleged to have violated, DHP argues in its response to Ringo's motion to dismiss that the facts alleged in its complaint support claims under section 1030(a)(2)(C), (a)(4), (a)(5)(A)(i) and (B)(i). Section 1030(a)(2)(C) makes subject to criminal penalties one who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer if the conduct involved interstate or foreign communication." Section 1030(a)(4) makes subject to such penalties one who "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period." And under section 1030(a)(5)(A)(i) and (B)(i), one who "knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without

10

authorization, to a protected computer" and thereby causes "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value" is subject to criminal penalties.

Although the CFAA is primarily a criminal statute, section 1030(g) authorizes a person who suffers damage or loss due to a violation of some other provision of the Act to bring a civil action for compensatory damages and injunctive or other equitable relief. As another court has recently noted, however, section 1030(g) is "put together in a somewhat confusing way." *Motorola, Inc. v. Lemko Corp.*, 2009 WL 383444, *3 (N.D. Ill. Feb. 11, 2009). Section 1030(g) reads in pertinent part:

> Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief. A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B).

18 U.S.C. § 1030(g). This subsection has been construed to permit a civil action for damage or loss caused by a violation of any of the substantive provisions of the CFAA, as long as the conduct involved one or more of the factors set forth in section 1030(a)(5)(B)(i)-(v). *Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 115657 (5th Cir.2006); *Charles Schwab & Co., Inc. v. Carter*, 2005 WL 351929, *3 (N.D.Ill. Feb. 11, 2005). "In short, a person suing under section 1030(g) must prove: (1) damage or loss (2) by reason of (3) a violation of some other provision of section 1030, and (4) conduct involving one of the factors set forth in section 1030(a)(5)(B)(i)-(v)." *Motorola*, 2009 WL 383444 at *4. The factors set forth in section 1030(a)(5)(B)(i)-(v) describe various kinds of harm that must exist in order to bring a civil action. In this case, the only kind of harm alleged that would qualify is the harm set forth in section 1030(a)(5)(B)(i): "loss to 1 or more persons during any 1-year

11

period . . . . aggregating at least $5,000 in value." The question presented by Ringo's motion is whether DHP has stated a claim under any of the provisions it has cited.

### 1. Violation of section 1030(a)(2)(C)

A person violates section 1030(a)(2)(C) if he or she "intentionally accesses a computer without authorization or exceeds authorized access and thereby obtains information . . . from any protected computer if the conduct involved an interstate or foreign communication." 18 U.S.C. § 1030(a)(2)(C). The elements of a section 1030(a)(2)(C) violation thus include (1) intentional access of a computer, (2) without or in excess of authorization, (3) whereby the defendant obtains information from the protected computer. *Motorola*, 2009 WL 383444 at * 4.

Ringo contends that the complaint fails to state a claim under this section because it is clear from the allegations that Ringo was an employee of DHP and was authorized to access DPH's computer system. The term "exceeds authorization," as defined in the CFAA, means "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accessor is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). The term "without authorization," though not defined in the CFAA, has been interpreted by other courts to mean "conduct by outsiders who do not have permission to access the plaintiff's computer in the first place." (Def.'s Br. In Opp. Mot. S. J. at 7.) Based on these definitions, Ringo argues that DHP's claim under section 1030(a)(2) fails because it is clear from the complaint that he was employed by DHP and thus had access to the very information DHP claims he obtained without authorization.

In support of his argument, Ringo relies on several cases that have rejected CFAA claims by employer plaintiffs against employees who have used their computer access to misappropriate confidential information and then share it with a competitor. In *US Bioservices Corp. v. Lugo*, 595

12

F. Supp.2d 1189 (D. Kan. 2009), for example, the plaintiff group of specialty pharmaceutical care providers who serviced the pharmaceutical needs of manufacturers, physicians, patients, and payors, sued former employees who allegedly obtained confidential information while still employed by the plaintiff and then disclosed the information to their new employer, a competitor of plaintiffs, who then used the information to interfere with plaintiffs' contractual and business relationships. *Id.* at 1190. Finding it clear from the complaint that the defendant employees had access to the computer in which the information was maintained as part of their employment at the time they obtained it, the district court dismissed the CFAA claim on the ground that they had not acted without or in excess of that authorization. Ringo argues that the same reasoning applies here. Since he was authorized as part of his employment to access DHP computers and retrieve the information he is alleged to have obtained, DHP cannot state a claim under section 1030(a)(2).

The difficulty with Ringo's argument is that the cases upon which he relies conflict with binding Seventh Circuit precedent. In *Int'l Airport Ctrs., LLC v. Citrin*, 440 F.3d 418 (7th Cir. 2006), the Seventh Circuit, applying agency principles, held that an employee's breach of his duty of loyalty to his employer terminates the agency relationship and with it the employee's authority to access the employer's computer system. *Id.* at 420-21. Thus, an employee who acquires an interest adverse to his employer and fails to disclose it loses his authority to obtain confidential information. *Id.* at 421. While *Citrin* has been criticized and rejected by other courts, *see, e.g., Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 964-65 (D. Ariz. 2008), it is controlling here. DHP's allegation that Ringo breached his duty of loyalty by going to work for one of its competitors while remaining in its employ is therefore sufficient to state a section 1030(g) claim that he violated section 1030(a)(2) by his continued "usage, copying, downloading or removal of information."

13

(Compl. ¶ 53.) And because DHP has alleged that as a result of his obtaining access to information from its protected computer, Ringo caused DHP loss in excess of $5,000, the complaint sufficiently alleges a civil claim against Ringo under that provision of the CFAA.

**2. Violation of section 1030(a)(2)(4)**

A person violates section 1030(a)(4) of the CFAA if he or she "knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value . . . ." 18 U.S.C. § 1030(a)(4). Ringo contends that "DHP has failed to establish that Ringo accessed its computers without authorization or in excess of his authorized access." (Br. In Opp. at 9.) He further contends that "DHP has failed to allege any facts in support of its claim that Ringo acted with any intent to defraud." (*Id.*)

For the reasons already stated in connection with DHP's claim that Ringo's conduct violated section 1030(a)(2), the complaint sufficiently alleges that Ringo acted without or in excess of his authorization. As to Ringo's assertion that DHP has failed to allege facts in support of its claim that Ringo acted with intent to defraud, it is sufficient to note that at the pleading stage detailed factual allegations are not required. *George v. Smith*, 507 F.3d 605, 608 (7th Cir. 2007) (noting that while plaintiffs "need not plead facts, . . . . they must give enough detail to illuminate the nature of the claim and allow defendants to respond"). While a violation of section 1030(a)(4) requires that the defendant act with intent to defraud, fraud *per se* is not an element. Thus, the particularity requirement of Rule 9(b) does not apply. *See* Fed. R. Civ. P. 9(b); *Motorola*, 2009 WL 383444 at *3. Moreover, even if Rule 9(b) did apply, the complaint sets forth significant particularity regarding Ringo's alleged deception of DHP in using confidential information to compete against

14

it even while continuing in DHP's employ. (Compl. ¶¶ 13-33.) While it is true that DHP alleges Ringo's intent to defraud only generally, Rule 9(b) requires nothing more. Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *see also C.H. Robinson Worldwide, Inc. v. Command Transportation, LLC*, No. 05 C 3401, 2005 WL 3077998, at *4 (N.D. Ill. Nov.16, 2005) It thus follows that DHP's claim under section 1030(a)(4) survives as well.

### 3. Violation of section 1030(a)(5)

It is not enough for DHP to show it sustained a loss of income as a result of Ringo's alleged conduct in order to establish a violation of section 1030(a)(5). "In contrast to a claim under section 1030(g) based on violation of section 1030(a)(2) or (a)(4), a plaintiff seeking to recover via section 1030(a)(5) of the CFAA must allege, and ultimately prove, the defendant's conduct resulted in damage as the CFAA defines that term." *Motorola*, 2009 WL 383444, at *7. Damage, as defined by the CFAA, "means any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(d)(8). Downloading confidential information would not seem to cause "damage" so defined.

The Seventh Circuit held in *International Airport Centers v. Citrin*, however, that an employer's allegation that its employee had installed a secure-erasure program on the employer's computer which deleted the employer's files, as well as other files that incriminated the employee himself, was sufficient to state a claim under section 1030(a)(5)(i) and (ii). 421 F.3d at 420. It made no difference, according to the Court, whether the erasure program was downloaded from the internet or copied from a floppy disc or CD inserted into a disc drive that was either inside the

15

computer or attached to it by a wire. *Id.* at 419. Either method involved the transmission of a program intended to cause damage without authorization to a protected computer. *Id.*

It is not clear from the complaint in this case whether Ringo is alleged to have engaged in similar conduct. DHP alleges facts from which it could be inferred that he installed an "enterprise version of Norton Ghost software" on the laptop issued to him by DHP without DHP's authorization (Compl. ¶¶ 18-26), but it is unclear if this software simply assisted the copying of the hard drive or also deleted files that incriminated Ringo. If the latter, *Citrin* suggests that his conduct would be actionable under section 1030(a)(5), as well as the other cited subsections of the CFAA. *Id.* at 421. Given my conclusion that DHP has sufficiently stated section 1030(g) claims for Ringo's alleged violations of section 1030(a)(2) and (a)(4), there is no need to proceed further at this pleading stage of the case. Accordingly, Ringo's motion to dismiss DHP's claim under the CFAA will be denied.

### III.  Motion for More Definite Statement

The purpose of Federal Rule of Civil Procedure 12(e) is to narrow issues, disclose the boundaries of the plaintiff's claims, and simplify and expedite proceedings. *Scarbrough v. R-Way Furniture Co.*, 105 F.R.D. 90, 91 (E.D. Wis. 1985). However, "because of the many discovery procedures presently available to litigants in federal courts, district judges are admonished to exercise their discretion sparingly in ordering more definite statements." *Id.* A motion for a more definite statement must be denied where the complaint is not so vague or ambiguous as to make it unreasonable to use pretrial devices to fill gaps in detail. *Id.* A Rule 12(e) motion is used when a complaint is unintelligible, and not for when a defendant just wants more detail. *Id.* Rule 12(e) motions are rarely granted and are disfavored by courts. *Id.* at 92.

16

Case 1:08-cv-01039-WCG    Filed 04/20/09    Page 16 of 17    Document 17

Here, DHP has not drafted a complaint that is so vague or ambiguous as to preclude Ringo from formulating a responsive pleading. Although Ringo states in his motion that the breach of agency duty claim is "vaguely consistent with a cause of action for breach of fiduciary duty," in fact, the Complaint states outright that Ringo owed DHP certain fiduciary duties of agent to principal, and that Ringo breached those duties. (Compl. ¶¶ 45-46.) The Complaint is not unintelligible, nor does it lack sufficient detail as to the claim. Under these circumstances, I conclude that the motion should be denied.

For the reasons given above, the motions (Doc. # 9) are **DENIED**. The Clerk is directed to set this matter on the Court's calendar for a Rule 16 scheduling conference. *See* Fed. R. Civ. P. 16(b).

**SO ORDERED** this   20th   day of April, 2009.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge