UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DENTAL HEALTH PRODUCTS, INC.,

    Plaintiff,

v.                                                              Case No. 08-C-1039

FRANK RINGO, et al.,

    Defendants.

## DECISION AND ORDER

Plaintiff Dental Health Products, Inc., based in New Franken, Wisconsin, sells dental supplies to dentists throughout the country.[1] Defendant Frank Ringo began working for Plaintiff in 2002 and became Illinois branch manager in 2005. He resigned effective August 1, 2008, after which he began working for a company called Dental Equipment & Supply of Illinois, Inc. ("DESI"), which had been set up by his wife, Tammy. Defendant David Cornejo also joined DESI. In Ringo's version, he left after becoming frustrated with a new manager. In Plaintiff's view, Ringo left because he thought he could make more money competing with his former employer.

In any event, both Ringo and Cornejo were subject to confidentiality and non-compete agreements. As applicable here, the agreements precluded them from contacting Plaintiff's customers for 90 days after their resignation. During his employment with Plaintiff, Ringo maintained a company called J&M Professional Contractors, Inc. According to Plaintiff, Ringo

---

[1] The parties have used a number of abbreviations, such as DHPI, DESC, and DESI. Given the similarity of these abbreviations, to avoid confusion I have chosen to identify the parties simply as "Plaintiff" and DESI.

used J&M as a front to divert dental sales business to himself as early as 2007, a year before he left. For example, he made a sale to a dental office in Chicago with an invoice dated November 1, 2007. (PPFOF ¶ 26.) Plaintiff also asserts that Ringo was in contact with the office of Drs. Sullivan and Gorman during the 90-day non-compete period following his exit from Plaintiff's company. In addition, Plaintiff asserts that shortly before they left, Ringo and Cornejo arranged for the hard drive on Ringo's company computer to be copied. Plaintiff viewed this with alarm and spent nearly $16,000 on computer experts to determine what Ringo might have done with its computer. Ringo asserts that he merely made the copy to "protect" himself and sent the copy to his attorneys without ever viewing the information himself. Although several factual disputes exist, they are not material to my analysis below.

**II. Analysis**

Defendant Dental Equipment & Supply of Illinois, Inc. ("DESI") has moved for summary judgment on the claims brought against it. Plaintiff has filed motions seeking partial summary judgment against Ringo and Cornejo. It concedes that issues of fact preclude complete relief as to damages, but argues that liability has been soundly established. Summary judgment is proper if the pleadings, discovery and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2). Local Rules also require that *pro se* litigants such as Ringo be alerted that admissible documentary evidence will be accepted by the Court as being true unless the party unrepresented by counsel submits the party's own affidavit, declaration, or other admissible documentary evidence contradicting the factual assertion. Civil L. R. 56(a). Ringo received the requisite *pro se* notice.

**A. Plaintiff's Motion for Partial Summary Judgment**

Plaintiff has moved for partial summary judgment. It asserts it is entitled to judgment as a matter of law against Ringo for his breach of his duty of loyalty and violation of his non-compete agreement. It further asserts that Ringo and Cornejo are liable for violations of the Computer Fraud and Abuse Act. Finally, it claims it is entitled to judgment on Ringo's counterclaim under the Illinois Wage Payment and Collection Act.

**1. Ringo's Duty of Loyalty**

Plaintiff asserts that Ringo violated his duty of loyalty to the company by making side-sales to clients during the term of his employment. Ringo, who is *pro se*, responds that although he did provide some construction and cabinets for a dentist in Chicago, he did so because the dentist had a dispute with Plaintiff about previous credits owed to him. (Dkt. # 124 at ¶ 26.) He also argues that in 2008 he was on track to meet or exceed his 2007 sales figures for Plaintiff, meaning that even if he made a sale or two on his own, he could hardly be said to be competing with his employer in any meaningful way because he was making a lot of money for Plaintiff.

Plaintiff, however, cites a stack of invoices evidencing numerous sales through Ringo's company, J&M Professional Contractors, Inc., some of which total thousands of dollars. (Gatewood Aff., Ex. D.) To take just one example, page two of the exhibit shows an invoice from J&M to Dr. Curt Lang for what appears to be some $11,000 worth of dental chairs. (*Id.* at 2.) The invoice is dated July 22, 2008, roughly a week before Ringo left Plaintiff's employ. Ringo has not contested these bills or explained how they do not evidence competition with his employer. This is fatal, as the invoices reflect a pattern of sales of side dental equipment made during Plaintiff's employment. *General Automotive Mfg. Co. v. Singer,* 19 Wis.2d 528, 535, 120 N.W.2d 659, 663 (Wis. 1963)

("By failing to disclose all the facts relating to the orders from Husco and by receiving secret profits from these orders, Singer violated his fiduciary duty to act solely for the benefit of Automotive. Therefore he is liable for the amount of the profits he earned in his side line business.") Accordingly, I conclude that Plaintiff is entitled to judgment that Ringo violated the duty of loyalty. Damages will be for another day, as Plaintiff recognizes.

**2. Breach of Non-compete Agreement**

Plaintiff also seeks summary judgment on its claim that Ringo violated the non-compete agreement by contacting dentists about sales during the 90 days after he left the company. Ringo asserts in his response that he did not sell any products to dentists for a year after leaving Plaintiff, but he concedes that he was in contact with at least one dentist during that period. The affidavit and exhibits provided by Dr. Gorman show that Gorman purchased some $1191 worth of products through Ringo during the non-compete period. (Dkt. # 109.) It appears that the purchases were made through a company called DESC, based in Iowa, rather than any of Ringo's own entities. Even so, the non-compete prevented Ringo from contacting Plaintiff's customers for the purpose of selling dental supplies, regardless of where those supplies ultimately came from. I am satisfied that Ringo's bare denial of liability does not overcome the evidence in the record, limited though it may be. Once again, however, a determination of damages must await further proceedings.

**3. Computer Fraud and Abuse Act**

Soon before leaving, Ringo asked David Cornejo if Cornejo could make a copy of the hard drive on Ringo's laptop computer. Cornejo arranged for a copy to be made. Plaintiff asserts that this conduct violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030(a)(2)(C). That section creates penalties for anyone who "intentionally accesses a computer without

authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer if the conduct involved interstate or foreign communication."

In denying Ringo's motion to dismiss, I found that the fact that Ringo was employed by Plaintiff at the time he accessed its computer did not necessarily mean that he was authorized to access that computer. (Dkt. # 17 at 12-13.) The Seventh Circuit has held that an employee's "breach of his duty of loyalty terminated his agency relationship . . . and with it his authority to access the laptop, because the only basis of his authority had been that relationship.*"* *International Airport Centers, L.L.C. v. Citrin,* 440 F.3d 418, 420-21 (7th Cir. 2006). Thus, Plaintiff argues that because it is clear that Ringo violated his duty of loyalty, his "authorization" to access his employer's computer ended. In other words, once Ringo had determined to leave the company and decided to get a copy of the hard drive, he had crossed the line and was no longer authorized to do what he did. In short, *Citrin* makes clear that most employee disloyalty cases can be pled as CFAA cases, because a disloyal employee has forfeited his right to access his employer's computer.

Most of the time merely "accessing" a computer will not result in damages, much less damages in excess of the $5,000 minimum prescribed by the CFAA. Here, Plaintiff does not suggest that Ringo's accessing the information caused its computer system any damage or resulted in any competitive losses. After all, Ringo, a long-time salesman, knew most of the information by heart or could have developed it himself with little effort. (Ringo also denies actually accessing the hard drive once it was copied. He states that he copied the hard drive to protect himself rather than to access any confidential information.) Instead, Plaintiff argues that it spent nearly $16,000 on a computer forensic expert to determine the extent of Ringo's unauthorized access. This was a reasonable reaction to the knowledge that one of its key salesman had left the company in order to

5

compete with it and had made a copy of a company hard drive before doing so. *See EF Cultural Travel BV v. Explorica, Inc.,* 274 F.3d 577, 584-85 (1st Cir. 2001) ("loss" includes costs incurred to assess damage to or breach of computer security). Ringo has not contested the damages. Accordingly, I conclude Plaintiff is entitled to compensation for its "loss" of $15,865.88. (Gatewood Aff., Ex. I.)

**4. Ringo's Counterclaim**

Ringo has filed a counterclaim seeking relief under the Illinois Wage Payment and Collection Act, 815 ILCS 115. He asserts that Plaintiff wrongfully withheld commissions he had earned, failed to compensate him for vacation time, and owed him for health insurance Ringo paid for while he was a manager. (Dkt. # 55 at 35-36.) Plaintiff argues that the Illinois Wage Payment and Collection Act does not apply to it because it is not an Illinois company.

Section 115 states that "this Act applies to all employers and employees in this State . . ." 815 ILCS 115/1. "In plain, grammatically correct English, then, the Wage Act applies to a group consisting of employers and employees, all of whom are in Illinois." *Glass v. Kemper Corp.,* 920 F. Supp. 928, 931 (N.D. Ill. 1996). Plaintiff DHPI, as the answer admits, is a corporation incorporated under Wisconsin law with its principal place of business in New Franken, Wisconsin. It is not, therefore, an employer "in" Illinois. *Maxwell v. Vertical Networks, Inc.,* 2005 WL 950634, *10 (N.D. Ill. 2005) ("Vertical is based in California and is not an Illinois employer. It follows that Plaintiff cannot bring an Illinois Wage Act claim against Vertical . . .") Accordingly, the Wage Act counterclaim will be dismissed.

**B. DESI's Motion for Summary Judgment**

In the amended complaint, Plaintiff brought three claims against Defendant DESI, the company set up by Ringo and his wife. First, Plaintiff claimed that DESI misappropriated its trade

6

secrets and confidential information. Second, it claimed that the company aided and abetted Ringo's breach of his agency duty to Plaintiff. Finally, Plaintiff claimed that DESI tortiously interfered with Ringo's contract with Plaintiff.

**1. Misappropriation of Trade Secrets or Confidential Information**

Plaintiff first claims that DESI misappropriated its trade secrets and other confidential information. The information includes information that was on Ringo's hard drive, such as a sales report indicating a description of items sold to three customers, as well as their price and gross profit. Similar information about one customer, Dr. Stolarz, was emailed by Ringo to his wife.

Plaintiff has all but conceded that the information taken by Ringo does not qualify as trade secrets. It has not contested DESI's trade secret analysis, which posited that customer lists and basic financial information about clients does not constitute trade secrets. *Hecny Transp., Inc. v. Chu,* 430 F.3d 402, 404 (7th Cir. 2005) (customer information not trade secret unless not known in the trade). Here, the identities of dentists are not secret information. Although it is conceivable that some price and quantity information about a given customer could constitute a trade secret, Plaintiff has not cited any case supporting such a conclusion. Plaintiff cites the legal standard for a trade secret, but then does not explain how any of the specific information at issue here meets that standard.

Instead, Plaintiff argues that even if the information is *not* technically a trade secret, it is still "confidential" and deserving of protection. DESI argues, however, that there is no independent cause of action for misappropriating "confidential information," and so there must be some independent basis for such a claim. It argues that under *Burbank Grease Services LLC v. Sokolowski,* any other actions are preempted by Wisconsin's Uniform Trade Secrets Act ("UTSA").

7

2006 WI 103, 294 Wis.2d 274, 717 N.W.2d 781 (Wis. 2006). In that case, the state supreme court found that Wisconsin's UTSA was intended to "replace all pre-existing definitions of 'trade secret' and remedies for tort claims dependent solely on the existence of a specific class of information statutorily defined as 'trade secrets.'" *Id.* at ¶ 33. But in overruling the court of appeals, the supreme court found that the UTSA left "available all other types of civil actions that do not depend on information that meets the statutory definition of a 'trade secret.'" *Id.* Thus, the *Burbank* case does not mean that the UTSA is the exclusive means of protecting confidential information. Instead, it holds that causes of action can still exist relating to such information so long as they do not depend on the statutory definition of a trade secret.

Thus, while it is clear that the UTSA does not bar all non-trade secret claims relating to confidential information, it is equally clear that there is no statutory or common law claim for misappropriation of "confidential" information if that information is not a trade secret. There must be some independent basis – such as a contract – upon which to bring such a claim. Recognizing this, Plaintiff argues that the misappropriation claim is actually brought pursuant to the parties' confidentiality agreement. During Ringo's employment, the parties had contractually agreed, in a confidentiality agreement, that Ringo would keep the information at issue confidential. (Dkt. 33, Ex. C.) That agreement broadly defines confidential information to include such things as customer lists, habits, buying information, customer identity, and the like. (*Id.*) Ringo agreed to keep this information confidential and to not use it himself. Thus, in Plaintiff's view, this confidentiality agreement governs the scope of what is confidential and protected.

Even if the information qualifies under the agreement's definition of confidentiality, however, DESI was not a party to that agreement. That is, assuming Plaintiff and Ringo agreed to

define confidentiality more broadly than the trade secret statute, DESI cannot somehow be bound by that definition. Ultimately, Plaintiff cannot identify any basis – statutory, common law, or contractual – upon which to bring a "misappropriation of confidential information" claim against DESI. Accordingly, the claim will be dismissed.

**2. DESI's Aiding and Abetting**

The second claim against DESI alleges that DESI aided and abetted Ringo's breach of his duty of loyalty to Plaintiff, his employer. "A person who, without being privileged to do so, intentionally causes or assists an agent to violate a duty to his principal is subject to liability to the principal. Under this provision, intention to cause or assist a violation of duty is the controlling consideration, not malice or personal profit." *St. Francis S & L Ass'n v. Hearthside Homes, Inc.*, 65 Wis.2d 74, 81, 221 N.W.2d 840, 844 (Wis. 1974) (quoting Rest. (2d) Agency § 312). Plaintiff explains that this claim is founded on its allegation that Tammy Ringo created DESI and encouraged Frank to misappropriate confidential information from his employer. In addition, Plaintiff argues that Ringo was placing orders for customers for his new business even while still employed by Plaintiff.

The first aspect of this claim fails for the reasons set forth earlier. The information at issue is not protected by trade secret law, and there is no other independent authority that would bind DESI and prohibit it from "abetting" an employee's use of such information. Plaintiff has not cited any precedent for an aiding and abetting claim based on an employee's use of information that is not protected by trade secret law.

But Plaintiff also argues that the aiding and abetting claim is based on Tammy Ringo's idea to set up her own business and the encouragement she gave her husband to join her and compete

9

with Plaintiff. According to Plaintiff, Tammy suggested in early 2008 that she could run a dental sales company and Frank could be the salesman. The two formed DESI in June 2008, and DESI began making sales in August 2008, soon after Frank left Plaintiff's employ. This is the extent of the aiding and abetting claim.

The problem is that such a claim would apply to anyone who solicits an employee or encourages the employee to start a new company. The facts cited by Plaintiff merely indicate that Tammy Ringo "encouraged" Frank to start a new company with her; he did so; and they began selling products soon after he left Plaintiff. The duty of loyalty does not mean abject slavery and unending devotion to one's employer; it simply means that a key employee should not be working at cross purposes while he is employed. Accepting the Plaintiff's view would mean any business that offers a job to a presently-employed person could be liable for aiding and abetting, and surely that is not the intent of such a claim. There has to be more than simple encouragement to begin a new career, and here Plaintiff does not offer any evidence that DESI went beyond that. Above I concluded that the evidence showed that Frank Ringo violated his duty of loyalty by engaging in specific acts of disloyalty, but none of these acts have been linked with DESI. Even using Plaintiff's facts, all DESI did (through Tammy Ringo) was encourage Frank to begin a new company, and that is not enough to violate any duties of loyalty. Accordingly, this claim will be dismissed as well.

**3. Tortious Interference with Contract**

Finally, Plaintiff alleges that DESI tortiously interfered with Frank Ringo's non-compete agreement. It argues that Frank Ringo made contact with certain dentists during the non-compete period and sold them products through DESC, the company based in Iowa. DESI argues that *it*

made no sales during the 90-day period after Ringo left Plaintiff's employ. Thus, even if Frank was involved with another company during that period, DESI was not interfering with any non-compete agreement.

Plaintiff's argument amounts to little more than an assertion that because Frank and Tammy Ringo were married, she must have known that Frank was subject to a non-compete agreement. But whether or not she knew about the non-compete, there is simply nothing in the record suggesting that Tammy's company, DESI, had anything to do with *interfering* with that non-compete during the 90-day period. Plaintiff suggests that a jury could infer that Tammy *discussed* her husband's use of the Iowa company to sell products during this period, but that is hardly tortious interference. The simple fact that Tammy had an awareness of a non-compete agreement does not mean that she or her company interfered with that agreement. Accordingly, the tortious interference claim will also be dismissed.[2]

**C. Ringo's Motion to Compel**

Frank Ringo has also brought a motion to compel production of numerous documents he contends are essential to his case. Many of these documents relate to his wage claim, which is dismissed in this order, rendering the motion to compel moot. Other of the documents sought involve Ringo's performance history with the company, and that history is not relevant to any defense to the claims asserted here. To the extent the motion to compel seeks information about damages – such as Ringo's own sales to Plaintiff's clients – damages will be the Plaintiff's burden to prove. Plaintiff will have to rely on documents (such as those attached to its affidavits)

---

[2] Although Plaintiff cites the confidentiality agreement in its brief, it does not argue that DESI tortiously interfered with that agreement.

establishing its damages, and Plaintiff has already had the ability to read these. In short, the documents sought in the motion have either been produced or are not relevant to any of Ringo's defenses. Accordingly, the motion to compel and for sanctions will be denied.

**III. Conclusion**

In sum, Plaintiff's motion for partial summary judgment against Frank Ringo is **GRANTED**, as Ringo has not created a genuine issue of material fact as to his liability for breach of loyalty and breach of the non-compete agreement. His liability under the CFAA is also established, with damages of $15,865.88. Defendant DESI's motion for summary judgment is also **GRANTED**, as Plaintiff has not provided any evidence from which a jury could conclude that DESI was involved in Ringo's actions. The motion to compel and for sanctions is **DENIED**. Given that the issues have been narrowed significantly, it is hoped that the parties can come to an agreement on damages.[3]

**SO ORDERED** this __24th__ day of August, 2011.

          s/ William C. Griesbach
          William C. Griesbach
          United States District Judge.

---

[3] I have not addressed the motion for summary judgment brought against David Cornejo, who has recently filed for bankruptcy protection. All proceedings as to Cornejo are therefore stayed.